Kane vs. Herman.

---

KANE, Administrator, Respondent, vs. HERMAN, imp., Appellant.

*January 9 — February 1, 1901.*

*Contracts: Guaranty: Release of one guarantor: Alteration of promissory note: Implied consent.*

Several stockholders of an embarrassed corporation, being guarantors of its indebtedness to a large amount, made an agreement among themselves by which one of them, C., in consideration of his incumbering certain of his private property as security for a portion of said debts, was to be released from liability upon another por-

Kane vs. Herman.

tion, including a negotiable promissory note not yet due, but the ultimate loss sustained by the failure of the company to pay its debts was to be shared equally by the guarantors. Thereafter, with the consent of the payee, C.'s name was erased from the guaranty on said note. *Held* that, even if the other guarantors did not expressly assent to such physical erasure of C.'s name, yet such assent should be implied from the other terms of their agreement, and the alteration of the note did not, therefore, release them from liability thereon.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

In July, 1893, the appellant, together with Cook, Hyde, Hadfield, and Brand, were interested as stockholders in the Gothenburg Water Power & Investment Company, which was in embarrassed circumstances. They were liable, all or some of them, upon about $200,000 of indebtedness of that company, including a negotiable, undue note of $8,000 to A. L. Kane, upon which was a guaranty of payment signed, in the following order, by A. H. Hadfield, Cook & Hyde, *Henry Herman*, and M. H. Brand. A conference was had as to a method of providing for this mass of indebtedness, so that its enforcement should not bring ruin upon the individuals as well as upon the corporation. As a part of that negotiation, it was arranged that Mr. Cook, one of the firm of Cook & Hyde, would incumber certain private property of his own as security for those debts, excepting about $42,000 worth, which included the note in question; he insisting that the firm name had been signed to the guaranty of that note without his consent or approval. It was accordingly arranged and agreed by all of the guarantors to that note that Mr. Cook, in consideration of making the security aforesaid, should be released from liability upon the $42,000 in question. Thereafter, in July, 1893, a written agreement was entered into between the parties, reciting the above-mentioned indebtedness in detail, the liability of the several parties thereon, the mortgaging of the property

of the corporation, and the furnishing of security by Cook, and, as an additional recitation and agreement, contained the following:

"Whereas, it has been agreed between the parties hereto that the said Cook shall be released from his indorsement upon certain of said liabilities amounting in all to the sum of $42,000, but notwithstanding such release it is understood and agreed that in adjusting between the parties hereto the losses, if any arise, by reason of the inability of the said Gothenburg Company to pay its said debt represented by said notes, or any part thereof, that the parties hereto shall stand upon an equal footing, and shall pay each one fifth of the ultimate loss sustained by reason of the failure of said company to pay its debt or any part thereof: Now, therefore, this indenture witnesseth that the said *Herman* is to relieve the said Cook from indorsements upon the following notes, that is to say:

| | |
|---|---:|
| Charles Friend | $20,000 |
| G. P. Sanborn | 3,000 |
| George Ellis | 6,000 |
| Making in all | $29,000 |

"That the said Brand is to relieve said Cook from his indorsements on the following notes, that is to say:

| | |
|---|---:|
| A. L. Kane | $8,000 |
| James A. Bryden | 5,000 |
| Making in all | $13,000 |

"And arrange to take up said notes so that the said Cook shall be relieved of all liability thereon."

This was followed by the further agreement that the parties should share, as between themselves, in specified proportion, any sums which they were compelled to pay, and that the agreement was merely for the purpose of enabling the parties to adjust the amount of their liability on said indebtedness between themselves, and that it was not to operate in any way as a promise in favor of any creditor of said company. Thereafter, without specific knowledge of the appellant, *Herman*, Brand, who had agreed to relieve Cook from liability upon the Kane note, procured the consent of Kane that Hyde, Cook's partner, might erase the firm name of Cook & Hyde from the guaranty on that note, which was

accordingly done by drawing a pen through it, and the name of Hyde then added to the signers of the guaranty. The note was in this condition when offered in evidence. As to whether or not, in the arrangement for the release of Cook from certain liabilities, it was expressly agreed and consented to that his name should be physically stricken from the guaranty, there was conflict of evidence. The note was never paid, and this action was brought thereon against the corporation and all of the signers of the guaranty. Verdict was directed in favor of the plaintiff against all of the defendants except Cook, from judgment whereon the defendant *Herman* appeals.

For the appellant the cause was submitted on the brief of *Quarles, Spence & Quarles.* They contended, *inter alia,* that whether consent to the erasure was to be implied from the written agreement was a question depending upon extrinsic facts and should have been left to the jury. *Barreda v. Silsbee,* 21 How. 146–168; *Iasigi v. Brown,* 17 How. 182; *Stoops v. Smith,* 100 Mass. 63–66; Thompson, Trials, §§ 1072, 1073, 1082, subd. 2, 1098; *West v. Smith,* 101 U. S. 263–270; 1 Greenl. Ev. § 277; *Holmes v. Montauk S. Co.* 93 Fed. Rep. 731, 735; *Sheehy v. Duffy,* 89 Wis. 6.

For the respondent there were separate briefs by *George L. Williams,* attorney, and *Winkler, Flanders, Smith, Bottum & Vilas,* of counsel, and oral argument by *Mr. Williams* and *Mr. J. G. Flanders.*

Dodge, J. The appellant's contention is that although he, in common with the other guarantors, consented to the release of defendant Cook from liability upon the note in suit, he did not consent to the physical erasure of Cook's name therefrom, and that the promissory note and guaranty thereof, when offered in evidence, presented upon its face a material alteration, and could not properly have been received, nor could it serve as a basis of recovery in an action

predicated thereon. There is no substantial controversy
that all the parties did agree that Mr. Cook should be re-
leased upon this note and guaranty. That is evidenced by
the oral testimony as to the verbal agreements, and by the
recitation in writing of the existence of such an agreement.
The situation disclosed was that of several individuals un-
dertaking, each separately, to finance and provide for a
considerable volume of indebtedness in the midst of the
panic period in July, 1893, at a time when the presence of
ostensible liability, or liability for which one might be re-
quired to respond, although he had a perfectly good claim
on others for reimbursement, might be a very serious ob-
stacle to his plans for carrying and providing for that which
he in fact ought to pay. So that the extinction of Cook's
even ostensible liability must have been well understood to
be very material to him by all of the parties to that nego-
tiation, including the appellant. Again, the idea involved
in the release was not extinguishment as among themselves
of so much of Mr. Cook's share of the liabilities which all
had assumed for the corporation, because the parties, *ex in-
dustria*, entered into a stipulation as to how they would
divide among themselves all such liability as fell upon them
respectively. The expression " release " must therefore have
been used by the parties with reference to the particular in-
strument, and must have intended release of the specific lia-
bility *to the creditor*, in order to accomplish the purposes
which they all had in mind. How did they intend that
such result be attained? It appears, and was of course
known to all parties, that the instrument held by Kane, and
guaranteed by the several defendants, was a negotiable
promissory note, still having some three months to run. It
was therefore liable on any day to reach the hands of an
innocent holder for value, who would have the right to en-
force it according to the very words thereof, regardless of
any agreement either among the guarantors or between
the guarantors and the creditor, Mr. Kane. There was

therefore no way possible to accomplish the purpose, and to release Mr. Cook from the peril of being called on to pay that note, except by alteration of the instrument itself, either by striking his name from the list of guarantors, or by some other alteration which should declare his nonliability. It is therefore an irresistible conclusion, from the agreement which the parties confessedly made for the release of Mr. Cook from this note, that they contemplated and authorized such acts as would effectuate that release; and, although there is conflict of evidence as to whether the physical erasure of Cook's name was expressly assented to, we are constrained to hold that assent thereto was given by implication from the other terms of that agreement.

Of course, as a result of this view, the paper, when offered in evidence with the explanation, though altered, was shown to have been altered by the consent of the appellant, and was admissible in evidence, and such alteration had no effect to discharge him from liability thereon. The trial court, therefore, was right in directing a verdict for the plaintiff as against this appellant.

*By the Court.*— Judgment affirmed.